234 F.2d 942
 Freeman S. HURD, Plaintiff-Appellant,
v.
ILLINOIS BELL TELEPHONE COMPANY, American Telephone and Telegraph Company, and the Bankers Trust Company of New York, Defendants-Appellees.
Harley A. SEYBOLD, Walter S. Young, Charles E. Kluegel, Milo S. Buck, W. O. Oliver and Archie B. Calender, Plaintiffs-Appellants,
v.
WESTERN ELECTRIC COMPANY, American Telephone Company and The Bankers Trust Company of New York, Defendants-Appellees.
 No. 11646.
 No. 11645.
 United States Court of Appeals Seventh Circuit.
 June 27, 1956.
 
 Harry R. Booth, Maurice Walk, Chicago, Ill., for appellant.
 Douglas F. Smith, Clyde E. Shorey, Chicago, Ill., for appellees.
 Kenneth F. Burgess, Arthur R. Seder, Jr., Chicago, Ill., Sidley, Austin, Burgess & Smith, Chicago, Ill., of counsel, for defendants-appellees Illinois Bell Tel. Co., American Tel. & Tel. Co., and Western Electric Co., Inc.
 Clyde E. Shorey, Jr., Chicago, Ill., for Bankers Trust Co., defendant-appellee.
 Before MAJOR, LINDLEY and SWAIM, Circuit Judges.
 LINDLEY, Circuit Judge.
 
 
 1
 These appeals from judgments in favor of defendants present identical questions. At the time of the oral argument we entered an order permitting one Harry C. Bordwell to intervene as a party appellant in No. 11646, subject to the further order of the court. We shall allow that order to stand, despite any doubt pervading its propriety, but feel that our determination in this respect should be clarified.
 
 
 2
 The original action was brought by plaintiff Hurd, a retired employee of defendant Illinois Bell Telephone Company, who asserted a claim predicated upon the Bell retirement pension plan on behalf of himself and as the representative of all other pensioners similarly situated. His efforts in this respect appear to have been financed by funds collected from numerous members of the supposed class. It further appears that certain parties now doubt Hurd's faithfulness in prosecuting the appeal on behalf of the represented class, and petitioner, a member of the class, asserts that he is entitled of right, under the provisions of rule 24(a) (2) of the Federal Rules of Civil Procedure, 28 U.S.C., to intervene to insure that he and other members of the class will not be injured should Hurd, by his actions, jeopardize the effective prosecution of this appeal.
 
 
 3
 We think this argument is hardly tenable, inasmuch as it presumes and depends upon the existence of a real class action. Here we are dealing with a spurious class action, containing common elements of fact and law, but based upon separate and individual claims growing out of the same transaction. Hughes v. Encyclopedia Britannica, 7 Cir., 199 F.2d 295; Kainz v. Anheuser-Busch, Inc., 7 Cir., 194 F.2d 737. In such an action, separate judgments are entered "and no one is bound unless he is present." Kainz v. Anheuser-Busch, Inc., 194 F.2d at page 742. Therefore, petitioner is not bound by the judgment and is not, we believe, entitled to intervene on appeal as a matter of right.
 
 
 4
 But, although intervention after judgment is not to be lightly permitted this cause is so fraught with elements of possible prejudice to petitioner and other pensioners similarly situated, that we, in the exercise of a sound discretion conclude that our order permitting petitioner to intervene should be allowed to stand. This view is fortified by the fact that defendants do not loudly contend that this disposition of the question will in any way prejudice their rights. They base their resistance to Bordwell's petition largely upon the asserted lack of merit of petitioner's claim of right. For these reasons, our order will stand and petitioner Bordwell is added as a party plaintiff-appellant in appeal No. 11646.
 
 
 5
 The plaintiffs in No. 11645 are retired former employees of either defendant Western Electric or defendant American Telephone and Telegraph Company. As we have previously stated, the plaintiffs in No. 11646 are retired former employees of defendant Illinois Bell. These parties are hereinafter referred to as plaintiffs and defendants without distinction between or identification of the parties in the separate appeals.
 
 
 6
 Each appeal involves the validity of defendants' interpretation and administration of the company sponsored retirement benefits plan commonly known as the Bell System Pension Plan. In 1913, each defendant executed and put into effect a retirement pension plan for its employees. The three plans involved are identical and are hereinafter referred to as the Bell plan or the pension plan, without distinction. This plan is a unilateral arrangement whereby each defendant undertook to provide retirement benefits to its employees, and, for this purpose, to allocate a determinable sum annually to a fund set aside for that purpose. No employee contribution is required. Each defendant has deposited sums allocated to its plan with defendant Bankers Trust Company under separate trust agreements whereby the latter company has undertaken to disburse the funds in accord with the orders of the respective settlors. No question of breach of trust by Bankers is presented; it is a nominal defendant only, and is not included in the generic term defendants when used herein.
 
 
 7
 The plan provided for the payment of pensions to each employee retiring after specified periods of employment, in an amount to be computed upon the basis of a percentage of such employee's average wage multiplied by the number of the years of his employment. In 1914, in apparent anticipation of public pensions or benefits to aged persons, the plan was amended by the addition of a provision in the following language, which now appears as Section 8 (27):
 
 
 8
 "In case any benefit or pension shall become payable under the laws now in force or hereafter enacted of any State or Country to any employee of the Company or his beneficiaries under such laws, the excess only, if any, of the amount prescribed in these Regulations above the amount of such benefit or pension prescribed by law shall be the benefit or pension payable under these Regulations. * * *"
 
 
 9
 With the advent of the Social Security Act, 42 U.S.C.A. § 301 et seq., defendants amended the plan in 1940 by inserting therein a new paragraph, Section 8(28), which provided that, upon the date when any pensioner becomes "entitled" to receive Old Age and Survivors Insurance benefits under the Act, "the amount of his monthly service pension otherwise payable under this Plan shall be reduced by one-half of said `primary insurance benefit' (OASI) * * *." This provision was not modified in any material detail until 1952 when the section was amended in certain respects which will be discussed subsequently.
 
 
 10
 Plaintiffs as retired employees, are beneficiaries under the plan by reason of their employment for the requisite number of years. Each of those who retired within the decade from 1940 to 1950, since retirement, has received monthly pension payments in accord with defendants' interpretation and application of the plan, i. e., in an amount computed consistently with the basic arithmetical formula prescribed in the plan, less one-half of the monthly OASI benefit to which the employee was "entitled" at the date when the monthly pension check was payable. In other words, upon retirement, the amount of an employee's monthly gross pension is finally fixed by application of the formula, but the deduction therefrom on account of OASI entitlement is scaled upward as Congress increases the primary OASI benefits and the net pension payment from the fund is commensurately scaled downward. Until 1952, Section 8(28) was amended in form, but not in substance, to comport with amendments of the Social Security Act.
 
 
 11
 Plaintiffs in each case set out these facts; each asked for judgment in the aggregate amount by which the pension payments received by him since retirement have been reduced by deductions on account of OASI benefits. The theory of each cause rests upon basic contentions, first, that the pension plan, and, specifically, Section 8(27) did not contemplate deduction of OASI benefits from private pension payments, and, second, that interpretation of the plan to permit the deduction of a private industry pension because of the entitlement to, or receipt of, OASI benefits is a violation of the Social Security Act, specifically Section 207 thereof, 42 U.S.C.A. § 407. A number of contentions are asserted by plaintiffs, but all are parts or variations of those major premises.
 
 
 12
 Our task is materially aided by the exhaustive opinion written by Judge Hoffman. He examined critically and in detail each contention relied upon by plaintiffs, examining the pertinent provisions of the plan and construing them in the light of the intention of the parties and as affected by the application of numerous legal authorities. He also analyzed the relevant provisions of the Social Security Act and adopted a construction of the statute resting upon an exhaustive analysis and application of many authorities.
 
 
 13
 We have examined the record, the extensive briefs of the parties and the authorities upon which their reliance is placed and are convinced that the trial court's decision is sound. We have found no authority which impinges upon its reasoning and conclusions. No helpful purpose can be served by repeating what has already been said by the judge in his opinion reported as Hurd v. Illinois Bell Telephone Company, D.C., 136 F.Supp. 125. Consequently, we shall restrict our comments to a brief supplement, dealing with matters now urged as error.
 
 
 14
 The pension plan is a unilateral contract which creates a vested right in those employees who accept the offer it contains by continuing in employment for the requisite number of years. The first major contention of plaintiffs largely depends upon just what the right is which vests in an employee upon his retirement in accord with the plan. Such an employee receives only a right to receive a monthly pension, not in a specified amount, but in an amount computed in accord with the provisions and conditions of the whole contract.
 
 
 15
 One such condition arises out of the provisions of Section 8(27) which requires the deduction from gross pension under the plan of any public benefits to which a pensioner is entitled under federal or state statutes. We agree with the trial court that this provision is broad enough to comprehend OASI benefits. Juristic niceties of distinction between such terms as "pension", "benefit" and "insurance" as applied to this question must give way before the manifest intention of the parties as shown by their writing. We think there can be no doubt that Section 8(27), when read in conjunction with the contract as a whole, was intended to encompass all public payments of old age benefits by whatever name they may be called. And we agree with the determination that OASI is within the category of benefits to which the section applies.
 
 
 16
 We agree, also, that the policy which was written into the plan requiring the deduction of one-half of OASI benefits from the private payments violates neither the letter nor the spirit of the Social Security Act. The reported opinion has supplied us with a detailed analysis of both the proscription against transfers contained in Section 207 of the Act and the Congressional policy embodied in the enactment. We need add little; we merely observe that if defendants do receive an economic benefit from OASI by the reduction of payments from the private pension funds, that benefit is largely theoretical. In part, at least, the deduction of one-half of OASI entitlement represents a writing-off or balancing of a superadded liability, inasmuch as the federal OASI tax would otherwise impose upon defendants a greater economic burden than that which they voluntarily assumed when they adopted the private plan. It can be as legitimately said that the deduction complained of is a device to maintain in balance the assumed burden of contribution to pension funds generally, as to say that it represents a "reaching" for an economic benefit. In any event, we think this poses a problem within the realm of moral evaluation, not legal.
 
 
 17
 Our remarks may be concluded with a brief consideration of the validity of the trial court's conclusion as to the effect of the 1952 amendment to Section 8(28) of the plan. In 1952, Congress so amended the Social Security Act as to increase the primary OASI benefit which would have required a further reduction of the private pension payments to retired employees. In response to this amendment, however, Section 8(28) of the plan was amended to provide that deductions from pension payments of employees retired prior to 1952 would be scaled to the primary OASI benefit under the 1950 Act, while payments to employees retired after 1952 would be reduced by an amount equal to one-half of the OASI benefit to which such employees would be entitled under the statute in force at the time of retirement. This provision is challenged as discriminatory.
 
 
 18
 We cannot agree. The effect of that amendment upon plaintiffs was to remove the uncertainty of the superseded section, which had conditioned the determination of the amount of pension payments upon subsequent amendments of the Social Security Act and to fix a final condition subsequent which would establish once and for all time, the amount of their monthly pension checks. As to employees active in 1952, the revised section represents a new basic procedure for determining the amount of OASI deductions and, in this respect, a new unilateral contract which they could accept by continuing in employment for the requisite number of years. In other words, the 1952 amendment represents two separate contracts in one, closing the group who had accepted the offer upon retirement prior to 1952, and opening a new group composed of the then active employees who ultimately might qualify thereafter.
 
 
 19
 Plaintiffs have no cause for complaint if their net pension entitlement was computed by application of the provisions of the contract as it existed at the time of their retirement, irrespective of whether successor employees might receive enhanced benefits from a new contractual undertaking. We believe that plaintiffs have received the full measure of their rights under the plan.
 
 
 20
 The following language from Hurd v. Illinois Bell Telephone Company, 136 F. Supp. at page 156, adequately sums up the correct disposition of these appeals: "The decision is in no way a judgment of the merits of the offset device. The court has concluded only that the Bell Plan authorized the deduction of Social Security benefits in the manner followed and that no rule of law, including the Social Security Act, makes unlawful a pension system which takes advantage of governmental benefits to which employees subsequently become entitled. Whether the integration of a private pension plan with Social Security to produce the results found in this case is good policy or unfair and misleading to the employees is a question which the court cannot decide for the parties in this action."
 
 
 21
 The judgments are affirmed.