### BERNARD M. MILLER *v*. BERNARD SHAPIRO, WELFARE COMMISSIONER

CIRCUIT COURT

FIRST CIRCUIT
FILE No. CV 1-659-10736

Memorandum filed July 14, 1966

*Sidney Vogel,* of Norwalk, for the plaintiff.

*Harold M. Mulvey,* attorney general, and *Edmund C. Walsh,* assistant attorney general, for the defendant.

WISE, J. The facts are not in dispute. The plaintiff, Bernard M. Miller, is the father and legally liable relative of his son Alan, who was born October 22, 1923, was admitted to the Southbury Training School May 5, 1964, and is presently, and for the foreseeable future will be, hospitalized at that school. The plaintiff obligated himself to pay the maximum rate of payment for the support of his son at the school, namely $26.95 per week. General Statutes § 17-295 (b). Having attained the age of sixty-five, the plaintiff became a recipient of federal social security benefits in the amount of $101 per month. As the plaintiff was a retired person under the federal social security law and the parent of a disabled person within the definition of that legislation, the federal social security admin-

istration paid to the plaintiff, as "representative payee" for his son, a sum equal to one-half of the plaintiff's benefits, namely $50.50 per month. An investigation of the financial circumstances of the patient was made by the state welfare department, as required by § 17-295 (c) of the General Statutes, prior to the instituting of billing for the care of Alan Miller. This investigation disclosed that the patient was receiving a social security award of $50.50 per month as a disabled child through the account of his father, Bernard M. Miller; this award is to be distinguished from the award of $101 per month which the plaintiff, Bernard M. Miller, was receiving in his own behalf and which is not at issue in this appeal.

Section 17-295 (a) sets forth the manner in which the comptroller shall annually determine the cost and compute the charges for patients in state humane institutions. At the time this matter arose and until September 1, 1964, the statutory maximum charge which could be made against a patient was $35.04 a week. Since the patient's total income consisted of the $50.50 per month social security payment as aforesaid, and since a patient was allowed $6 per month for personal incidental expenses, a billing of $10.15 per week ($44.50 a month) was instituted against the patient's social security benefit. Since the patient's income was insufficient to cover the maximum cost of $35.04 as aforesaid, an investigation of the parents of the patient, as legally liable relatives, was undertaken, also pursuant to § 17-295 (c).

Section 17-295 (b) limits the maximum charge which can be made to a legally liable relative to $26.95 a week. The plaintiff, rather than disclose his financial circumstances to the welfare department, agreed to accept the maximum billing as a legally liable relative. Since, however, the difference

between the $35.04 and the $10.15 ($24.89) was less than the maximum rate of $26.95, billing was set at the amount of $24.89. When the statutory maximum which could be charged to a patient was raised to $44.98 on September 1, 1964, the rate charged to the plaintiff as a legally liable relative was raised to $26.95, the maximum permitted by the statute. Subsequently, the plaintiff requested a fair hearing, alleging that $26.95 was the total charge which could be made for the care of his son and that the billing of $10.15 per week against the son's social security benefit was not authorized by § 17-295. On August 23, 1965, the fair hearing was held, and the billing by the welfare commissioner as aforesaid was upheld. That decision gave rise to the present appeal.

The issue involved in this appeal is whether the additional charges of $10.15 per week made against the social security benefit payment being received by the plaintiff in his capacity as representative payee for his son Alan is in violation of § 17-295 (b). Put in other words, the question is, to whom does the social security payment belong? Is it the property of the parent or that of the dependent child? If the former, the assessment is improper. If the latter, the assessment is correct. The question has never been decided and is of first impression in this state.

The analogy of an insurance policy made by the plaintiff lacks merit. If we assume that, by the terms of the policy, the parent receives the payments upon the happening of the event, he then can do whatever he wishes with the money he so receives. He cannot be compelled to turn it over to the welfare commissioner since the money is his. On the other hand, if the child is the beneficiary and, by the terms of the policy, the parent must use the money for the support and maintenance of the child, the money is not

the property of the parent but that of the child. In such a case, the parent could be required to turn the proceeds over to the welfare commissioner even though the proceeds stem from an insurance policy as distinguished from social security.

An examination of the pertinent social security statutes clearly indicates that the money is given to the parent in a representative capacity. 53 Stat. 1364, as amended, 42 U.S.C. § 402 (d) (Sup. I, 1965); see 20 C.F.R. §§ 404.1601—404.1610. What is the representative capacity? It is not in his capacity as parent or legally liable person for the support of his child. It is in the capacity of a representative of the child. Because the money cannot be given to the child directly, it is given to the child by means of delivering it to one who represents him. That person conceivably may not be the parent. If the parent does not faithfully carry out his trust, he can be removed and another representative can be appointed to receive the payments. In such an event, the parent would still be obligated to pay what he is liable for as the legally liable person under the statute. Another situation may exist where the parents die. Can it be claimed that the social security payments cease or that they belong to the estate of the deceased parent? In such a case, another person would be appointed to receive the payments as the representative of the child on the theory that the money belongs to the child.

The plaintiff's contention that the social security payments are being used by the parent for the maintenance of the child has no merit. The payments are being so used by the parent not in his capacity as parent or legally liable person but in his representative capacity. To reason otherwise is to enable the parent as the legally liable person to diminish his own liability and thereby indirectly

appropriate the social security payments to himself instead of applying them as directed by the social security statutes.

The instant action is an appeal under § 17-2b of the General Statutes. That section provides in part: "The court, upon such appeal, shall determine whether the commissioner has acted illegally or so arbitrarily and unreasonably as to abuse his discretion . . . ." The court finds that the commissioner did not act illegally or arbitrarily and unreasonably. The court is of the opinion that the social security payments payable to the representative payee of the dependent child are the property of and belong to the child, and so finds.

The court wishes to express to counsel its gratitude for the conscientious and able handling of this case.

Judgment may enter dismissing this appeal.