William Fred **DOWELL**, Appellant,

v.

**AETNA LIFE INSURANCE COMPANY,**
Appellee.

No. 72–1405.

United States Court of Appeals,
Fourth Circuit.

Argued Sept. 15, 1972.

Decided Oct. 31, 1972.

Larry S. Moore and John E. Hall, North Wilkesboro, N. C. (Moore & Rousseau and McElwee & Hall, North Wilkesboro, N. C., on brief), for appellant.

Allan R. Gitter, Winston-Salem, N. C. (Womble, Carlyle, Sandridge & Rice, Winston-Salem, N. C., on brief), for appellee.

Before SOBELOFF, Senior Circuit Judge, WINTER, Circuit Judge, and THOMSEN, Senior District Judge.

THOMSEN, Senior District Judge.

Plaintiff appeals from a decision of the district judge, sitting without a jury, which allowed defendant-appellee certain credits against payments to plaintiff under a group policy. The policy had been issued by defendant to the corporation which employed plaintiff until January 13, 1966, when he received an injury in the course of his employment, which has totally disabled him since that date.[1] Defendant had issued to plaintiff a "Group Insurance Certificate Long Term Disability Benefits," which set out in detail plaintiff's rights under the group policy.

The provisions pertinent to the issues raised by this appeal are:

"*Monthly Benefit*: The amount of monthly benefit, as of any given time prior to age sixty-five, will be an amount equal to the excess, if any, of 65% of the Employee's monthly

---

1. Defendant conceded that plaintiff was totally disabled during the first 24 months after the accident, but denied that he met the standard of total disability which applies after the first 24 months. The district court decided this issue in favor of plaintiff and defendant has not appealed.

rate of basic earnings over the amount, if any, of other income benefits payable for the same monthly period, but the amount of monthly benefit shall not, in any event, be more than $1,000.

"\* \* \* \*

"C. Other Income Benefits referred to on Page 1 of this Certificate[2] shall include:

"(1) 65% of the amount of any remuneration the Employee receives from any employer for work performed in connection with an approved rehabilitation program;

"(2) the amount of any other remuneration the Employee receives from any Participant Employer, or from any other employer;

"\* \* \* \*

"(4) the amount of any income the Employee receives under a retirement plan covering employees of any Participant Employer;

"\* \* \* \*

"(7) the amount of any income the Employee receives by reason of early retirement, other than because of disability, under the Federal Social Security Act, or the Railroad Retirement Act; and

"(8) any payment under the Federal Social Security Act or the Railroad Retirement Act, or by the Veterans Administration or any federal, state, municipal, or other governmental agency or pursuant to any workmen's compensation law, occupational disease law, or any other legislation of similar purpose, or the maritime doctrine of maintenance, wages, and cure, for a disability which commenced after the effective date of the Employee's insurance under the group policy."

Plaintiff did not dispute and the district judge allowed the credits claimed by defendant for the amount paid to plaintiff as temporary total disability under the North Carolina Workmen's Compensation Act, and for all disability benefits paid to plaintiff himself under the Social Security Act. Plaintiff did dispute the credits claimed by defendant and allowed by the district judge for (1) the amounts paid to plaintiff under the Workmen's Compensation Act for permanent partial disability and the amounts paid to him or on his behalf under that Act for medical expenses resulting from his injury and disability, (2) the benefits paid to his wife and children under the Social Security Act because of his disability, and (3) the sum of $2,502.56 paid to plaintiff from his employer's profit sharing plan.

■ (1) Provision C(8) of the policy, quoted above, includes among "Other Income Benefits" for which defendant is entitled to a credit: "any payment \* \* pursuant to any workmen's compensation law \* \* \* for a disability which commenced after the effective date of the Employee's insurance under the group policy." This language is unambiguous, and clearly entitles defendant to the credits claimed for compensation paid to plaintiff for permanent partial disability, and for medical expenses paid pursuant to the Workmen's Compensation Act as a result of plaintiff's injury and disability. Provision C(8) is not limited to amounts the employee himself receives, as are, for example, Provisions C(1) and (2).[3]

■ (2) Provision C(8) also clearly includes among "Other Income Benefits" for which defendant is entitled to a credit: "any payment under the Federal Social Security Act \* \* \* for a disability which commenced after the

2. I. e., in the paragraph quoted above, headed "*Monthly Benefit*".

3. The applicable rules of construction are discussed in Roberts v. American Alliance

Ins. Co., 212 N.C. 1, 192 S.E. 873 (1937). The purpose of the North Carolina Workmen's Compensation Law is discussed in Branham v. Denny Roll & Panel Co., 223 N.C. 233, 25 S.E.2d 865 (1943).

effective date of the Employee's insurance under the group policy." As noted above, the credit under C(8) is not limited to amounts the employee himself receives.[4]

 (3) The credit for the amount "paid to plaintiff from his employer's profit sharing plan" presents a more difficult question. The district court found as a fact that plaintiff received from his employer $2,502.56, "which amount was the plaintiff's equity in the profit sharing plan of his employer, High Point Sprinkler Company, which amount the plaintiff was allowed to receive in cash, although he had the option to leave the same with the Company for retirement purposes when he became the age of sixty-five years." The court's conclusion was: "There can be no serious question that benefits received under a profit sharing plan constitute income under a retirement plan of an employer. They are certainly a reward or compensation for services rendered rather than a gratuity. As such, they constitute income and are, therefore, deductible by the defendant." There is nothing in the record to show the basis for that finding and conclusion. It does not appear that the profit sharing plan was offered in evidence, or that there was any stipulation with respect to its provisions. Profit sharing plans are of various types and contain various provisions. Such a plan may or may not be part of a retirement plan, within the meaning of Provision C(4).[5] Plaintiff's rights under the plan were evidently the result of his employment before the accident; without knowing more about them we cannot say that they constituted "remuneration" within the meaning of Provision C(2), which is the alternate ground of credit suggested by defendant. We have concluded that we should remand the case, so that the district judge may receive into evidence the profit sharing plan and any other relevant and material evidence on this one question. The other rulings appealed from are affirmed.

Remanded with instructions.

---

4.  Compare C(7), which allows credit for income the employee himself receives by reason of early retirement, other than because of disability, under the Federal Social Security Act.

5.  See e. g. Savitz, A Profit Sharing Primer, Practical Lawyer, vol. 14, p. 49 (April 1968).