643 F.2d 108
 Anneliese B. LAMB, individually and on behalf of all other
persons similarly situated, Appellant,
v.
CONNECTICUT GENERAL LIFE INSURANCE COMPANY, a Corporation of
the State of Connecticut.
 No. 80-1523.
 United States Court of Appeals,
Third Circuit.
 Argued Dec. 4, 1980.
Decided Feb. 23, 1981.
 
 Robert H. Jaffe (argued), Springfield, N. J., for appellant; Robert H. Jaffe, Howard G. Schlesinger, Springfield, on brief.
 McCarter & English, Newark, N. J., Eugene M. Haring (argued), Newark, of counsel; Richard M. Eittreim, David R. Kott, Newark, on brief, for appellee.
 Before ADAMS, GARTH and SLOVITER, Circuit Judges.
 OPINION OF THE COURT
 ADAMS, Circuit Judge.
 
 
 1
 This appeal presents two related questions: first, whether Section 207 of the Social Security Act, 42 U.S.C. § 407 (1976), prohibits the defendant, Connecticut General Life Insurance Company (CGLIC), from offsetting Social Security disability benefit increases received by the disabled plaintiff, Annaliese Lamb, against the benefits payable to the plaintiff under the terms of a group disability insurance policy; and second, whether the public policy expressed in Section 202 of the Social Security Act, 42 U.S.C. § 402 (1976), forbids the additional offset against Lamb's disability insurance benefits of Social Security benefits payable to her dependents. We conclude that neither of these offsets is unlawful under the Social Security Act, and therefore affirm the district court's grant of summary judgment to the defendant.
 
 I.
 
 2
 In 1969, Lamb's employer, Overlook Hospital, purchased a group long-term disability policy from CGLIC that covered certain enrolled employees, including Lamb. The policy provided covered employees who became disabled with a monthly income payment equal to 70% of the monthly income they had earned while employed. Payments under the plan were reduced by "Other Income Benefits" payable to the disabled employee, including Social Security disability benefits, so that the total of insurance payments and "Other Income Benefits" always equalled 70% of the employee's previous monthly earnings.[1]
 
 
 3
 Lamb became permanently disabled within the meaning of the CGLIC plan in January, 1971. On June 30, 1971 she was found to be eligible for Social Security disability benefits for both herself and her dependents. Consequently, CGLIC adjusted her monthly income benefits to reflect the Social Security benefits that she received for herself and her dependents. Thereafter, as Social Security benefits have increased to keep pace with the cost of living, CGLIC has reduced by an equivalent amount the Monthly Income Benefits it pays to Lamb. The result is that to date Lamb receives the same gross amount each month that she received in 1971.
 
 
 4
 Objecting to the way in which the CGLIC plan prevented her total income from rising with inflation, Lamb filed suit against CGLIC, charging that the insurance company fraudulently induced her to join the group plan through misrepresentations in the information it supplied to Lamb and the other employees. In addition, Lamb complained that the offset of Social Security disability benefit increases against the policy payments violated 42 U.S.C. § 407, which interdicts assignment, transfer, execution or other legal attachment of future Social Security benefits. Lamb also alleged that the reduction of CGLIC benefits in proportion to the amount of Social Security payments she received for her dependents under 42 U.S.C. § 402 violated the public policy underlying that section. Finally, she asserted claims for statutory penalties under the Welfare & Pension Plan Disclosure Act (WPPDA), 29 U.S.C. § 301 et seq., and the Employment Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 et seq.
 
 
 5
 The district court recognized that neither WPPDA nor ERISA applies to this disability plan, and dismissed the final allegation asserted by Lamb. It also granted summary judgment to the defendant on the question of illegal offsets. Determining that the fraud counts were state law claims, and that he had discretion not to exercise pendent jurisdiction after disposing of all federal law claims, the district judge dismissed these counts without prejudice to the right of the plaintiff to bring an action in state court relating to the fraud claims. On this appeal, only the summary judgment award against Lamb on the offset counts is before this Court.
 
 II.
 
 6
 Lamb first contends that the Social Security Act, 42 U.S.C. § 407 (1976),[2] prohibits CGLIC, as a matter of law, from deducting any increase in Social Security benefits payable to her from the amount paid to her under the insurance policy.
 
 
 7
 In so arguing, Lamb concedes that § 407 does not bar a "frozen" offset of Social Security benefits against amounts payable under private contracts. A frozen offset is one that is permanently fixed at the level of the recipient's initial Social Security benefits. Both state and federal law supports the validity of frozen offsets. See Hurd v. Illinois Bell Telephone Co., 136 F.Supp. 125, 142 (N.D.Ill.1955), aff'd, 234 F.2d 942 (7th Cir. 1956), cert. denied, 352 U.S. 918, 77 S.Ct. 216, 1 L.Ed.2d 124 (1956); Killebrew v. Abbott Laboratories, 352 So.2d 332, 336 (La.Ct.App.1977), aff'd, 359 So.2d 1275, 1278 (La.Sup.Ct.1978); Williams v. Insurance Company of North America, 150 Mont. 492, 434 P.2d 395, 397 (1967); Voss v. Mutual of Omaha Insurance Co., 469 S.W.2d 602, 604 (Tex.Ct.Civ.App.1971). Cf. Buczyinski v. General Motors Corp., 616 F.2d 1238 (3d Cir. 1980), cert. granted, --- U.S. ----, 101 S.Ct. 352, 66 L.Ed.2d 213 (1980). In Buczyinski, we held that anti-forfeiture language in ERISA, 29 U.S.C. § 1053(a), did not prohibit offsetting against pension benefits the amount a pensioner received under a New Jersey Workers Compensation statute.
 
 
 8
 Having conceded the validity of a frozen offset, however, Lamb maintains that an "unfrozen" offset, which decreases insurance payments as Social Security benefits are increased, violates the prohibition against assignment of future Social Security benefits, 42 U.S.C. § 407. She maintains that, since CGLIC reduces her insurance benefits whenever Social Security benefits are increased, it is CGLIC that enjoys the increases in Social Security benefits enacted by Congress, and not her. This, she asserts, is contrary to the intent of Congress.
 
 
 9
 Philpott v. Essex County Welfare Board, 409 U.S. 413, 93 S.Ct. 590, 34 L.Ed.2d 608 (1973) and Hisquierdo v. Hisquierdo, 439 U.S. 572, 99 S.Ct. 802, 59 L.Ed.2d 1 (1979), cited by appellant, do not support her argument. Both cases involved the transfer of Social Security payments to a third person through legal process. Here, Lamb's legal right to receive her Social Security payments and the increases is uncontested. She continues to receive those benefits, and has, in fact, at all times received combined benefits from the insurance policy and Social Security in excess of what she would receive from the Social Security program alone. Thus, neither Philpott nor Hisquierdo control the question of the validity, under sections 402 and 407, of an unfrozen offset.
 
 
 10
 In recent years, there have been a number of state and federal legislative determinations to prohibit unfrozen offsets under various benefit programs, because such offsets deprive insured individuals of any real benefit from the cost of living increases in Social Security mandated by Congress. For example, unfrozen offsets against qualified pension plans are forbidden under ERISA, see 26 U.S.C. § 401(a)(15), as well as under the Railroad Retirement Act, see 29 U.S.C. § 1056(b). In addition, many states have adopted statutes or regulations dealing with the integration of Social Security benefits and health and accident policies that pay disability benefits.[3] New Jersey, however, has not yet prohibited unfrozen offsets.
 
 
 11
 Congress, in 1978, considered S.3017, which would have prohibited unfrozen offsets of Social Security benefits. Congress has not yet passed the bill, however, and, in the absence of a legislative mandate to the contrary, it does not appear that an unfrozen offset violates the letter or spirit of the Social Security Act.
 
 
 12
 This conclusion is supported by Hurd v. Illinois Bell Telephone Co., 136 F.Supp. 125 (N.D.Ill.1955) aff'd 234 F.2d 942 (7th Cir. 1956). In Hurd, the employer offset one-half of a worker's federal old-age insurance benefits against the amount of pensions paid to retired employees. The effect of this unfrozen offset arrangement was that while the total benefits received from both Social Security and the pension increased with any Social Security benefit increase, a participant realized the benefit of only one-half of the federal increase. The district court concluded that the shift in the economic benefit of a Social Security increase from the recipient to the company did not constitute a "transfer" prohibited by § 407 of the Act. Reasoning that § 407 was directed at traditional types of assignments, whereby a recipient relinquished a portion of the federal benefits, the court found the fact that the workers received their full Social Security allotment to be dispositive. As the district court noted, § 407 "was never intended to freeze a worker's private pension at a particular level. It was concerned only with guaranteeing that the worker would actually receive for his own use the amount due him under the Social Security Act." 136 F.Supp. at 142. Finally, the court cited legislative history which indicated that Congress anticipated that private companies would integrate Social Security benefits with the amounts paid under private insurance programs.
 
 
 13
 The reasoning of the district court in Hurd appears to have considerable force. Here, the fact is that Lamb receives her full entitlement from the Social Security program. She has not transferred any portion of her federal benefits to the insurance company. Since § 407 does not address itself to the level of benefits that a private insurance program must pay to augment federal programs, we cannot say that the CGLIC insurance contract runs afoul of the anti-transfer provision of the Social Security Act.
 
 
 14
 Although it may appear inequitable that CGLIC is, in a theoretical sense, receiving the benefit of cost-of-living increases under the Social Security Act by diminishing the amounts it pays, Congress, rather than the courts, should attend to this problem. Lamb may also seek to attack the harsh affect of the insurance contract by asserting state law claims founded on misrepresentation or unconscionability of the contract. Federal law, however, currently does not prohibit unfrozen offsets against Social Security benefits that do not impact the level of funds the insured receives from the federal government.
 
 III.
 
 15
 The insurance policy offsets not only Lamb's own Social Security benefits, but also the Social Security benefits she receives for the support of her dependents. Lamb argues that this latter provision violates the policy underlying the section of Social Security Act providing disability benefits to dependent children, 42 U.S.C. § 402(d)(1).[4]
 
 
 16
 To support her position, Lamb relies primarily upon Coughlin v. CGLIC, 330 A.2d 159 (Del.Super.1974). In Coughlin, the court held, as a matter of state law, that the language of the disability insurance policy did not require the offset of payments made to the plaintiff's children against the benefits payable to plaintiff under the policy. Because Coughlin did not involve federal law, however, it has no bearing on Lamb's argument, which is predicated on the Social Security Act.
 
 
 17
 The district court held that the offset of payments received by Lamb's dependents on account of her disability does not transgress the policy undergirding the Social Security Act, 42 U.S.C. § 402. There is nothing in § 402(d)(1) to suggest that it prevents an employer from bargaining for an insurance contract to cover its employees that offsets Social Security benefits received for the support of dependents against the disability payments to be made under the policy. Similar to § 407, § 402(d)(1) is not addressed to the level of payment that must be maintained by a private insurance company. Thus, we cannot disagree with the conclusion of the district court.
 
 
 18
 Support for the conclusion reached by the district court may be found in Dowell v. Aetna Life Insurance Co., 468 F.2d 802 (4th Cir. 1972), cert. denied, 410 U.S. 931, 93 S.Ct. 1374, 35 L.Ed.2d 594 (1973), as well as in the recent decision of the First Circuit in Garvey v. Worchester Housing Authority, 629 F.2d 691 (1st Cir. 1980). In Dowell, the court upheld the validity of a contract offsetting Social Security disability benefits made to the plaintiff's wife and children against contractual disability insurance benefits paid to the plaintiff. 468 F.2d at 804-05. In Garvey, a nationwide class of residents of public housing sought declaratory and injunctive relief to prevent the Department of Housing and Urban Development from considering the Social Security benefits of minors as family income, for the purpose of computing rent levels for such public housing. The court affirmed the validity of HUD's practice of including minors' benefits when computing family income. These cases demonstrate that total family income, including dependents' Social Security allotments, rather than just individual income, may be considered when calculating benefit levels under public or private support programs.
 
 
 19
 For the foregoing reasons, we find that the terms of the Social Security Act prohibit neither of the offsets authorized by the CGLIC group disability plan. Although the Social Security Act as it now stands mandates this conclusion, the result appears somewhat incompatible with the overall intent of Congress in voting to augment the level of benefits. The purpose behind these cost of living increases is to alleviate the harsh impact of inflation on the elderly and the disabled. Yet, by virtue of the CGLIC policy, Lamb's income has remained fixed despite a dramatic rise in the cost of living since 1971.
 
 
 20
 Lamb's predicament evokes sympathy. But courts are constrained to apply the law as adopted by the legislature, within the limits set by the Constitution, and Congress has not yet acted to ban unfrozen offsets of social security benefits. It is the province of Congress, rather than the courts, to change existing law when social or economic conditions demand adaptation. Accordingly, we can only urge Congress to devote prompt attention to the unfortunate impact on disabled Social Security recipients of insurance arrangements such as the CGLIC disability plan.
 
 
 21
 The judgment of the district court will be affirmed.
 
 
 
 [1]
 The insurance policy between Overlook and CGLIC, and the Certificate of Insurance received by Lamb, contained the following pertinent provisions:
 The amount of Monthly Income otherwise payable for any monthly period will be reduced by the amount of all Other Income Benefits ... for the same monthly period.
 Other Income Benefits include:
 (1) any periodic cash payments provided on account of employee's disability;
 (b) by the Federal Social Security Act, including benefits payable to the employee's dependents on account of the employee's disability;
 The employer could have selected another plan that did not offset Social Security benefits in this fashion. Because CGLIC considered "Other Income Benefits" in its actuarial calculations, however, the premium under this other option would have been significantly higher.
 
 
 [2]
 42 U.S.C. § 407, reads, in pertinent part:
 The right of any person to any future social security payment ... shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this title shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.
 (Emphasis added).
 
 
 [3]
 See Dist.Ct.Op., Appendix B; App. at 637a for a compilation of the statutes and regulations of some jurisdictions
 
 
 [4]
 42 U.S.C. § 402(d)(1) provides, in part:
 Every child ... of an individual entitled to ... disability insurance benefits ... shall be entitled to a child's insurance benefit.