**Melinda CARSTENS, Plaintiff,**

v.

**The UNITED STATES SHOE CORPORATION'S LONG–TERM BENEFITS DISABILITY PLAN, Defendant.**

**No. C07–1662 TEH.**

United States District Court, N.D. California.

Oct. 31, 2007.

Cassie Springer–Sullivan, Teresa Susan Renaker, Lewis, Feinberg, Lee, Renaker & Jackson, P.C., Oakland, CA, for Plaintiff.

Jiyun Cameron Lee, Folger Levin & Kahn LLP, San Francisco, CA, for Defendant.

*ORDER DENYING DEFENDANT'S MOTION TO DISMISS*

THELTON E. HENDERSON, District Judge.

This matter came before the Court on Monday August 20, 2007, on a motion to

dismiss under Federal Rule of Civil Procedure 12(b)(6) filed by Defendant United States Shoe Corporation's Long Term Benefit Plan ("U.S.Shoe"). Having carefully reviewed the parties' papers, the arguments of counsel, and the record herein, the Court DENIES Defendant's motion for the reasons set forth below.

## BACKGROUND

Plaintiff became totally disabled in 1990, and Defendant U.S. Shoe began to pay her long term disability ("LTD") benefits according to the terms of her Plan ("Plan"). She also collected Social Security Disability benefits. Defendant offset Plaintiff's monthly benefit checks by her monthly Social Security payments, which Plaintiff does not dispute is authorized under the Plan.

In 2002, Plaintiff and her husband adopted a son named Willem, who also began receiving a monthly benefit from the Social Security Administration ("SSA"). When a person becomes disabled, retires, or dies, his or her dependent children become eligible to receive what is often termed a "dependent benefit." Children qualify for such benefits if they apply, are unmarried, dependent, and either under 18, under 19 and full-time students, or become disabled themselves before turning 19. 42 U.S.C. § 402(d). Willem began to receive benefits under 42 U.S.C. § 402(d) because his mother is disabled and he is an unmarried minor, dependent on his mother for support. In

2005, after Plaintiff filed an application on Willem's behalf, the SSA began to send Willem's monthly benefit check to Plaintiff, Willem's "representative payee." Subsequently, Defendant reduced Plaintiff's monthly LTD benefits by the amount the SSA was sending Willem. Plaintiff requested that Defendant review its decision to offset her benefits based on Willem's benefits. Defendant decided to continue offsetting her monthly benefits, and Plaintiff filed suit to recover these offsets.

The Plan[1] states that the employee's total monthly benefit will be offset by "payments or other compensation described in the applicable Offset Provisions below and which, for that month, are payable to the Employee, or to his spouse or children on the basis of the Employee's employment and earnings record." Plan Document at LTD 0-1. The offset provision in Plaintiff's LTD plan provides that Defendant may offset payments for any:

(B) "Periodic benefits, for loss of time on account of the Employee's disability, under or by reason of—

(1) any insurance or any health or welfare plan or other employee benefit plan where the Employer; directly or indirectly has paid all or any portion of the cost or made payroll deductions; (2) the United States Social Security Act as amended from time to time, exclusive of benefits paid to a former spouse of the

---

1. Defendant argues that the Court should consider the summary of Ms. Carstens's Plan, the "Summary Plan Description," in determining whether the benefits at issue should be offset here, citing to *Bergt v. Ret. Plan for Pilots Employed by MarkAir, Inc.*, 293 F.3d 1139, 1143 (9th Cir.2002) (Court should consider all plan documents, including summary plan description, in deciding whether an offset is proper). In evaluating whether a complaint is sufficient, a court must assume the facts alleged in the complaint are true unless the

allegations are controverted by exhibits attached to the complaint, matters subject to judicial notice, or documents the complaint necessarily relied on and whose authenticity no party questions. *Lee v. City of L.A.*, 250 F.3d 668, 688–89 (9th Cir.2001). The Complaint in this action does not refer to the SPD. Moreover, Plaintiff disputes that the summary Defendant offers relates to her plan. Under these circumstances, the Court will not consider it on this Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6).

Employee or to a child of the Employee residing with such former spouse".[2] *Id.*

## LEGAL STANDARD

Dismissal is appropriate under Rule 12(b)(6) when the plaintiff's complaint fails to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). The Court should not dismiss the claim unless it appears beyond doubt that the plaintiff can prove no set of facts that entitle him to relief. *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir.1990). The Court must accept all material allegations of the complaint as true and allow all reasonable inferences to be drawn from them, construing the complaint in the light most favorable to the plaintiff. *NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir.1986).

■ If a complaint is dismissed for failure to state a claim, leave to amend should be granted unless the Court determines that the allegations of other facts consistent with the challenged pleadings could not possibly cure the deficiency. *Klarfeld v. U.S.*, 944 F.2d 583, 585 (9th Cir.1990). The appellate court reviews denial of leave to amend for abuse of discretion. *Id.*

## DISCUSSION

■ The Court finds that Willem's Social Security benefits are not replacement for his mother's "loss of time," and therefore should not be offset under the Plaintiff's Plan.

### A. "Loss of Time" as a Term of Art

"Loss of time" refers to the income a person can no longer earn after sustaining either a permanent or temporary disability. Insurance policies can compensate for both "loss of time" and the disability itself, and many cases have found that "compensation for the disability and compensation for the lost time are two different things." Couch on Ins., 3d Ed. (2007) § 182.9. In some cases, insurance policies insure against and permit recovery of benefits for both total disability and "loss of time." *See Snelson v. Penn. Life Ins. Co.*, 65 Ill.App.2d 416, 212 N.E.2d 873 (5th Dist. 1965). The insurance policy then protects against disabilities that result in the insured's inability to perform *any occupation* and those that prevent the insured from performing the duties his current employer requires. *Id.* at 422, 212 N.E.2d 873. In other cases, insurance policies insure against and pay benefits for both "loss of time" *and* for the insured's inability to use the bodily function he had before he suffered from the disability. *See Fed. Life Ins. Co. v. Bolinger*, 100 Ind.App. 222, 193 N.E. 681 (1935). In these cases, the insured receives money for both the loss of his eye, for example, and for the "loss of time" associated with his inability to earn wages as a result of the disability. *Id.*

Most cases cited to this Court have found that Social Security payments to dependent children are "support payments" and have not characterized such payments as income replacement. The Third Circuit, for example, found that dependent benefits are "designed to provide the recipient for loss of support he or she sustains because of the disability of the parent." *In re Unisys Corp. Long–Term Disability Plan ERISA Litig.*, 97 F.3d

---

**2.** To the extent that the contract language is ambiguous, the doctrine of *contra proferentum* requires it to construe such ambiguities against the drafter. *Blankenship v. Liberty Life Assur. Co. of Boston*, 486 F.3d 620, 625 (9th Cir.2007). "Language is ambiguous when it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire ... agreement." *O'Neil v. Ret. Plan for Salaried Employees of RKO Gen., Inc.*, 37 F.3d 55, 59 (2d Cir.1994).

710, 716 (3d Cir.1996). The court further decided that the language of 42 U.S.C. § 402(d) (the same statute that Willem receives his benefits through) entitled dependents to receive the Social Security benefits, which, upon receipt, become the child's property. *Id.*

Similarly, in *Meeks v. Mutual of Omaha*, 70 Ill.App.3d 800, 802, 27 Ill.Dec. 313, 388 N.E.2d 1362 (1979), the court determined that payments made to the disabled plaintiff's daughter were not income to the plaintiff that she could use for her own needs, notwithstanding the fact that the daughter was only receiving benefits because her mother was disabled. Another court found that because the Social Security Act's language only entitled the *child* to receive the benefits, the parent had no right to the money, except in a representative capacity. *Coughlin v. Conn. Gen. Life Ins.*, 330 A.2d 159, 163 (Del.Super.1974).

*Whaley v. Schweiker*, 663 F.2d 871, 873 (9th Cir.1981), is also instructive. There, the plaintiff's dependent children were receiving Social Security benefits under 42 U.S.C. § 402(d), the same statute at issue here. The Ninth Circuit found that the dependent benefits were incorrectly characterized as their disabled father's income. *Id.* at 874. After examining the legislative intent behind 42 U.S.C. § 402(d), the court decided that dependent benefits were distinct from benefits paid to substitute for the disabled parent's lost income. *Id.* at 874–875. Based on the conclusion that the dependent benefits were not income to the parent or family, the court determined that the disabled parent's eligibility for his own Social Security benefits could not be reduced or offset by the amount he was receiving as the representative payee on behalf of his children. *Id.*

Just as the dependent benefits in *Whaley* were not a substitute for the disabled parent's lost income, Willem's benefits do not replace his mother's lost income—i.e., "loss of time." Rather, they are payments to children "for the purpose of their support and maintenance." *Id.* at 873. Accordingly, the Court finds that Willem's benefits cannot be offset under the Plan.

Although Defendant relies on *Lawrence v. Prudential Ins. Co. of Am.*, for the proposition that Social Security benefits paid to children are compensation for "loss of time," the *Lawrence* court never analyzed or even addressed dependent benefits. No. C4–5791FDB, 2005 WL 2671357 (W.D.Wash. Oct.19, 2005). It did not consider whether the plaintiff's benefits would be offset by the amount he received in Social Security because the plaintiff in *Lawrence* never challenged such offsets. The court held merely that "pension" benefits were for "loss of time," a proposition that has no bearing on the legal issue in this case. *Id.* at *4. Moreover, the factual background of the case is not analogous to the situation here.

Defendant's citation to *Coop. Benefit Adm'r. v. Whittle*, 989 F.Supp. 1421 (M.D.Ala.1997) is similarly unpersuasive. In *Whittle*, the plaintiff conceded that her LTD plan validly allowed the insurance company to offset the Social Security benefits his dependents received from his monthly benefit check, and as a result, the court never considered the issue of whether dependent benefits qualify as "loss of time." *Whittle*, 989 F.Supp. at 1428. Thus, the court's comment that the plan's language, which is very similar to the language at issue here, is unambiguous does not persuade this Court that Defendant can offset Ms. Carstens's benefits because the parties did not litigate the issue, and the court did not consider it. *Id.* Overall, based on the weight authority cited, the Court finds that "loss of time" is a term of art referring only to income replacement

for that lost directly as a result of the disability.

## B. Social Security Statutory Scheme

The Social Security statutory scheme itself also shows that Willem's benefits should not be classified as income replacement. Children whose guardians become disabled, die or retire are eligible for monthly benefits under the Social Security Act. Courts have frequently found that dependent benefits are designed to replace the support these children would have received had their parent continued to work. *See Mathews v. Lucas*, 427 U.S. 495, 507–508, 96 S.Ct. 2755, 49 L.Ed.2d 651 (1976); *Mornes v. Chater*, 91 F.3d 1403, 1404–1405 (10th Cir.1996); *Trammell v. Bowen*, 819 F.2d 167, 169 (7th Cir.1987). The purpose of dependent benefits is to replace a measure of "income and security" the child lost when his wage-earning parent died. *Ziskin v. Weinberger*, 379 F.Supp. 124, 126 (S.D.Ohio 1973). When Congress broadened survivor benefits to illegitimate children in 1965, the Senate indicated that the program was designed to replace the support children lost. S.Rep. No. 404, 89th Cong. 1st Sess. 110 (1965).

Under the statutory scheme, the dependent child continues to receive benefits even after his disabled parent dies. 42 U.S.C. § 402(d)(*l*)(C)(ii). In most cases, the child receives benefits based on his disabled parent's condition from his parent's death until he reaches the age of majority. *Id.* Benefits that continue after death cannot be compensation for "loss of time" the parent would have received but for his disability. The statute could have been written so that the child would stop receiving dependent benefits based on his parent's disability after the parent died, but could apply for and receive survivor benefits under the Social Security Act.[3] Instead, under the statutory scheme, the child simply continues to receive the same benefits he was receiving before by virtue of his parent's disability.

Moreover, the fact that the law mandates specific uses for the dependent benefits shows that Congress did not intend to have Social Security benefits to dependent children constitute "loss of time." Pl.Ex. 1, SSA Publ'n. No. 05–10076 at 3. Although the benefit check is sent to the parent, it is specifically for the dependent child's use. *Id.* The parent can only spend the Social Security benefits on the child's needs and must complete an annual accounting to document how the money was used. *Id.* Further, if there are remaining funds, the parent must place them in an interest-bearing account and cannot simply put them to the family's use. *Id.* at 12. Finally, if the dependent child dies, the remaining funds go to his or her estate, not to the parent. The Third Circuit considered the effect of this system and held that a representative payee is not the recipient of the benefits, but rather a person the SSA can trust to administer the funds in the child's interest. *In re Unisys*, 97 F.3d 710, 717 (3d Cir.1996). The accounting and other additional management responsibilities indicate that Congress did not intend dependent benefits to be considered the parent's income. Both features of the statutory scheme show that the "support" and "security" Congress provides dependent children is not income replacement.

Defendant argues that because the SSA calculates the child's benefit on the basis of

---

**3.** 42 U.S.C. § 402(d) covers all situations in which a minor is entitled to receive Social Security benefits by virtue of his parent. 42 U.S.C. § 408(d) provides multiple means for dependent minors to receive financial support under the Act, including simply being a dependent with a wage earning parent who dies.

the income the disabled parent earned before the onset of disability, 42 U.S.C. § 402(d)(2), the legislative intent was to compensate for lost income or "loss of time." However, the SSA's method of calculating the benefit is not dispositive. Congress intended to replace the support a child with disabled parents recently lost, and could reasonably choose to do so by relating benefits to the parent's former income.

## CONCLUSION

U.S. Shoe has not met its burden of demonstrating that Ms. Carstens can prove no set of facts to support her claim that would entitle her to relief. *Balistreri v. Pacifica Police Dep't.*, 901 F.2d at 699. Accordingly, with good cause appearing, IT IS HEREBY ORDERED that Defendant's motion to dismiss is DENIED.

**IT IS SO ORDERED.**